UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X          Docket No.      1:22-cv-7567
PATRICIA URENA,

                       Plaintiff,          COMPLAINT   FOR   DAMAGES,
                                                          DECLARATORY AND
             -against-          INJUNCTIVE RELIEF

BROOKHAVEN SCIENCE ASSOCIATES LLC,          JURY TRIAL DEMANDED
BROOKHAVEN NATIONAL LABORATORY,
and UNITED STATES DEPARTMENT OF
ENERGY

                           Defendants.
---------------------------------------------------------------X

      PLAINTIFF, PATRICIA URENA ("Plaintiff"), by her attorneys, PACIFIC JUSTICE

INSTITUTE, INC., through local counsel, April Forbes, Esquire, hereby complains of the

DEFENDANTS, BROOKHAVEN SCIENCE ASSOCIATES LLC ("BSA"), BROOKHAVEN

NATIONAL LABORATORY ("BNL") and UNITED STATES DEPARTMENT OF ENERGY

("DOE"), upon information and belief, as follows:

## NATURE OF THE CASE:

1.    This action results from Plaintiff being denied a reasonable accommodation and
      wrongfully terminated by her former employer, BSA, which refused to grant a religious
      exemption from any COVID-19 vaccines.

2.    This action primarily seeks the underlined employment reinstatement of Plaintiff with BSA, along
      with damages and other relief stemming from religious discrimination in violation of
      Title VII of the Civil Rights of 1964, as codified, 42 U.S.C. 2000e to 2000e-17, *as*
      *amended*, ("Title VII"); the Free Exercise Clause of the First Amendment of the United
      States Constitution ("Free Exercise Clause"); the Establishment Clause of the First

Amendment of the United States Constitution ("Establishment Clause"); the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution ("Equal Protection Clause"); and breach of implied contract under New York State law.

## PARTIES:

3.  Plaintiff currently resides in Suffolk County, New York, and was employed by BSA for all time periods relevant herein.

4.  BSA is a corporation organized and existing under the laws of the State of New York.

5.  BSA has a principal place of business located at 98 Rochester Street, Upton, New York 11973.

6.  BNL is a corporation organized and existing under the laws of the State of New York.

7.  However, BNL is a federal enclave, which is an area which New York State expressly ceded legislative jurisdiction to the federal government.

8.  BNL has a principal place of business located at 2 Center Street, Upton, New York 11973.

9.  DOE is an agency of the United States Government which owns, operates and/or maintains a principal place of business within the State of New York at either 53 Bell Avenue, Upton, New York, 11973; 98 Rochester Street, Upton, New York 11973; and/or 98 Rochester Street, Upton, New York 11973.

## JURISDICTION AND VENUE:

10. This Court has jurisdiction pursuant to 28 U.S.C. §1331 as it arises under the U.S. Constitution and the laws of the United States. This action presents a federal question pursuant to 42 U.S.C. §1343(a) (3)-(4) as it involves questions of federal law.

11.  Plaintiff also seeks declaratory relief as authorized by 28 U.S.C. §§ 2201 and 2202, pursuant to Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

12.  Venue is proper within this judicial district and division, pursuant to 28 U.S.C. §1391(b), because relevant events occurred in this jurisdictional district.

13.  Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over the state related claim based on breach of implied contract.

## PROCEDURAL REQUIREMENT(S) AND EXHAUSTION OF ADMINISTRATIVE REMEDY(IES):

14.  Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about April 21, 2022.

15.  On or about September 26, 2022, EEOC issued a Notice of Right to Sue to Plaintiff.

16.  As such, Plaintiff has timely filed this instant action and complied with all administrative and procedural requirements necessary to the commencement of this suit.

## RELEVANT BACKGROUND INFORMATION:

17.  Plaintiff was employed by BSA beginning on or around February 27, 1995 and continuing until December 21, 2021.

18.  Plaintiff held several jobs while in the employ of BSA; however, for all relevant times period herewith, Plaintiff was employed as a Senior Technical Specialist with BSA.

19.  BSA is the manager and operator of BNL which is a laboratory overseen by DOE and also funded by DOE.

20.  DOE is the legal owner of the premises where BNL is located.

21.     DOE manages the nuclear infrastructure of the United States of America ("USA") and administers the country's energy policy.

22.     DOE also funds scientific research which is conducted at several laboratory facilities throughout the USA, including BNL.

23.     The contract entered between DOE and BSA regarding the management of BNL by BSA on behalf of DOE is entitled 'The Solicitation, Offer and Award, Standard Form 33, Volume I – Uniform Contract issued by DOE, Solicitation No.: DE-SOL-0006266, Contract No.: DE-SC0012704 dated March 20, 2014' ("Government Agreement").

24.     The Government Agreement indicates that DOE has a Site Office at one of BSA's business addresses in Upton, New York.

25.     Most, if not all, of the documentation received by Plaintiff from her employer, BSA, which relates to the allegations of this Complaint was either on letterhead from BNL and referenced that BNL is managed by BSA on behalf of DOE and/or was sent from a government email address which ended in 'bnl.gov'.

### COVID-19 Mandatory Vaccination Policy

26.     In conjunction with the decision of the Federal Drug Administration ("FDA") to issue a full approval to the Pfizer COVID-19 Vaccine, along with President Biden's announcement in early September of 2021 that all federal contractors would need to comply with Executive Order 14042 on Ensuring Adequate Safety Protocols for Federal Contractors, and the November 5, 2021 Occupational Safety and Health Administration mandate ("the OSHA Mandate") requiring all private employers with 100 or more employees to implement a COVID-19 vaccination or testing requirement,

BSA began the process of developing a mandatory COVID-19 vaccination policy ("the BNL.GOV Mandate").

27.     The BNL.GOV Mandate required all employees of BSA to be fully vaccinated by November 17, 2021, except for individuals who required a reasonable accommodation on the basis of either religion or disability.

28.     The BNL.GOV Mandate remained in effect as a condition of employment for employees of BSA even subsequent to the decision of the Supreme Court of the United States[1] on January 13, 2022 staying the enforcement of the OSHA Mandate.

BNL/BSA's Notification to Employees Regarding
Requests for a Reasonable Accommodation

29.     With regard to eligibility for a reasonable accommodation from the BNL.GOV Mandate ("Accommodation"), on September 10, 2021, BSA notified its employees that individuals "with a legally recognized basis for an exception from the [vaccine] requirement … will be considered on a case-by-case basis, and if approved for an exception will be required to take part in a weekly testing program".

30.     With regard to the process for requesting Accommodation, on September 22, 2021, BSA notified its employees of the requisite forms and instructions associated with submitting an exemption request from the BNL.GOV Mandate.

31.     Within the notice sent by BSA on September 22, 2021 to its employees regarding the process for requesting Accommodation, included a statement that all accommodation requests would be considered to the extent that they did not pose an undue hardship on BSA.

---

[1] *National Federation of Independent Business vs. Dept. of Labor, et al.*, 142 S. Ct. 661, 211 L.E. 2d 448 (Jan. 13, 2022).

32.     Further, within the notice sent by BSA to its employees regarding the process for
requesting Accommodation included information regarding the requirement to provide
proof of vaccination if the request to be exempted from the BNL.GOV Mandate was
denied.

33.     In order to maintain employment with BSA, the key dates for individuals whose request
for an Accommodation to be exempted from the BNL.GOV Mandate was denied were
November 17, 2021 for the first vaccination dose of a COVID-19 vaccine and
December 17, 2021 for the second dose of a COVID-19 vaccine.

<u>BSA's Individualized Assessments of Reasonable Accommodation Requests</u>

34.     BSA assembled a panel comprised of individuals from its Human Resources, Legal,
and Employee Concerns Department ("BSA Panel").

35.     BSA Panel was responsible for conducting preliminary, individualized reviews of each
religious Accommodation request.

36.     BSA employees seeking a religious Accommodation were required to provide
information explaining the basis for the request.

37.     Thereafter, BSA Panel evaluated (1) the sincerity of the individual's belief based on
submitted information; and (2) the potential for the requested accommodation to pose
an undue hardship on BSA's operations.

38.     A document entitled "BNL COVID-19 Vaccination Requirement Accommodation
Rules" indicated that employees approved for an Accommodation would be required
to wear a face covering while onsite on the company's premises, submit to at least
once-weekly onsite PCR testing, and practice social distancing.

<u>BNL/BSA's Denial of Plaintiff's Request for a Reasonable Accommodation</u>

39.     Plaintiff has been a professing Christian for many years and, because of her sincerely held religious beliefs, could not receive any of the COVID-19 vaccines mandated by the BNL.GOV Mandate.

40.     On or about October 4, 2021, Plaintiff notified BSA of her sincerely held religious beliefs, including providing an explanation as to how the available vaccines from COVID-19 conflicted with her faith.

41.     On or about October 22, 2021, Plaintiff received correspondence from the following email address 'exemption@bnl.gov', which acknowledged receipt of the request for a religious Accommodation from the BNL.GOV Mandate.

42.     While legal precedent and EEOC guidance specifically addressing COVID-19 mandates state that an employer should assume that a request for a religious accommodation is based on sincerely held religious beliefs, practices or observances, the October 22, 2021 [standardized, form?] email sent to Plaintiff from BNL on behalf of BSA indicated the following:

> THIS IS A KEY PART OF THE INTERACTIVE PROCESS WHEREBY BSA AND YOU WORK TOGETHER TO DETERMINE YOUR NEED FOR ACCOMMODATION AND BSA'S ABILITY TO PROVIDE ONE.
> . . .
>
> We understand you have acknowledged taking adult vaccinations in the past.
>
> Please explain, with detail, how the specific religious belief or practice you observe prevents you from receiving a COVID-19 vaccination but has not prevented you from receiving other vaccinations.

43.     In response to the October 22, 2021 email sent from BNL on behalf of BSA to Plaintiff, a supplemental explanation was provided by Plaintiff regarding the sincerely held religious beliefs of Plaintiff and the conflict of those beliefs with receiving any COVID-19 vaccine.

44.     On or about November 4, 2021, BNL on behalf of BSA notified Plaintiff that the

request for Accommodation was denied. The denial stated, in relevant part, as follows:

> BSA has carefully considered your request, and after engaging in the interactive
> dialogue with you, it has determined that it is unable to approve your
> accommodation request because, among other things, the information you
> provided does not demonstrate your entitlement to a religious accommodation.
>
> The Lab will provide you time to obtain your vaccination if you should decide to
> do so. You are required to validate with the Occupational Medicine Clinic
> ("OMC") by December 17, 2021, that you have been vaccinated with both shots
> of either the Pfizer/BioNTech or Moderna vaccines or the first and only shot of
> the Johnson & Johnson vaccine.  This means that you will be fully vaccinated by
> December 31, 2021, two weeks after the date of your final vaccination. If you do
> not validate your vaccination status by December 17, 2021, your resignation will
> be effective December 21, 2021.
>
> During the period between November 8, 2021, through the date you are fully
> vaccinated (two weeks after your final vaccination in the series) or your
> resignation date, if you decided not to get the vaccine (December 21, 2021) you
> are required to follow the attached BNL COVID-19 Vaccination Requirement
> Accommodation Rules, which may be updated at any time. These rules, at a
> minimum, require the use of face coverings, social distancing measures, self-
> monitoring, and regular testing at least once per week. Please be advised that your
> failure to adhere to these rules may result in disciplinary action up to and including
> the immediate termination of your employment.

45.     Plaintiff, in response to the denial of her request for Accommodation, requested an

explanation as to the determination that the information provided by Plaintiff did not

demonstrate entitlement to a religious accommodation.

46.     Plaintiff, in response to the denial of her request for Accommodation, also questioned

whether any interactive dialogue actually occurred.

47.     Plaintiff's inquiry(ies) regarding the legitimacy of the interactive dialogue relative to

the request for Accommodation was due to the lack of any (1) face-to-face interaction;

(2) zoom; and/or (3) telephone conversation between Plaintiff and a representative of

BSA and/or BNL.

48.   Plaintiff was eager to engage in the interactive process, including, but not limited to, inquiring whether BSA/BNL would need a letter from her religious leader to supplement the request for Accommodation.

49.   BNL on behalf of BSA did not express any willingness to consider any additional information in connection with Plaintiff's request for Accommodation. Instead, BNL on behalf of BSA responded to Plaintiff, in part, as follows:

> . . . Specifically, the information you provided did not afford us with sufficient proof to conclude that a specific religious belief or practice prevented you from receiving a COVID-19 vaccine. Moreover, contrary to your representations, the COVID-19 vaccine does not "contain aborted fetal matter/parts" or "the blood of animals." …
>
> In response to your questions regarding our interactive dialog, we'd like to first acknowledge your cooperation with us in submitting your exemption request and responding to our follow-up question. Please understand that we made our decisions consistent with our legal obligations, including with respect to the interactive dialogue requirement. The information we obtained from you through this thorough exchange supported the outcome reached….

50.   On or about December 2, 2021, BNL/BSA reiterated to Plaintiff that to maintain employment compliance was necessary with the BNL.GOV Mandate due to the denial of her request for Accommodation.

51.   Within the December 2, 2021 correspondence, Plaintiff was given the ultimatum that if Plaintiff did not provide evidence of vaccination from COVID-19 by December 17, 2021, then Plaintiff's date of termination with BSA would be December 21, 2021.

52.   Subsequent to Plaintiff filing a complaint with EEOC, the position statement submitted on behalf of BSA indicated that Plaintiff's request for a religious exemption was rejected due to the failure to provide sufficient evidence supporting that Plaintiff held a sincerely held religious belief that conflicted with the BNL.GOV Mandate.

53.   BSA indicated, within its EEOC position statement, in part, as follows:

> the vagueness of her religious objections and citations to general biblical verses made it nearly impossible to identify the precise basis of her objection and the

extent to which it truly conflicted with BSA's vaccine requirement. Ultimately, her request, expressed a preference against receiving the vaccine rooted in false and/or misinformation rather than sincerely held religious beliefs.

54.   Additionally, within BSA's position statement, states, in part, as follows:

> Ms. Urena's assertions that her "body is the temple of the Holy Spirit" along with her other citations to vague Biblical passages, is similarly unpersuasive. Presumably, only Ms. Urena's receipt of the COVID-19 vaccine would corrupt that temple – not *any other vaccinations* or *any other* medical treatment, including those she voluntarily received as an adult, such as the October 2020 flu vaccine. While it is certainly Ms. Urena's right to refuse a vaccine or treatment she prefers not to receive, BSA is under no obligation to accommodate that preference merely because it is cloaked in religious language.

55.   Within the position statement filed with EEOC, BSA admits that it engaged in individualized assessments relative to all requests for Accommodation due to religious and medical reasons.

56.   Within the position statement filed with EEOC, BSA further admits that most of the requests for religious accommodations were granted.

57.   In that respect, beginning in November of 2021 and continuing into December of 2021, the BSA Panel reviewed 73 requests for a religious Accommodation, and approximately 59 of the requests for a religious Accommodation were granted.

58.   Within the position statement filed with EEOC, BSA additionally admitted receiving 24 requests for a medical Accommodation, and 13 of those requests for a medical Accommodation were granted.

59.   Ultimately, on December 21, 2021, Plaintiff was officially terminated from employment with BSA due to noncompliance with the BNL.GOV Mandate.

60.   Plaintiff, at the time of official termination from employment with BSA was a few years short of eligibility for full retirement.

61. As evident from all the Accommodations granted, Plaintiff's request for Accommodation could likewise have been granted without imposing an undue hardship on BSA.

62. There is no good faith basis for BSA/BNL to deny Plaintiff's request for religious Accommodation.

63. As such, Plaintiff seeks full reinstatement to employment with BSA, including the granting of the request for an Accommodation due to her sincerely held religious beliefs which compel her to decline receiving any COVID-19 vaccines.

## CAUSES OF ACTION:

**FIRST CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**BSA, BNL AND DOE**
**BASED ON VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
<u>**Termination on the Basis of Religion**</u>:

64. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint and incorporate those allegations herein by reference.

65. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq. contains the following definitions:

> (b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, any agent of such person…;
> . . .
> (f) The term "employee" means an individual employed by an employer…
> …
> (j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

66.    42 U.S.C. §2000e-2 entitled UNLAWFUL EMPLOYMENT PRACTICES provides, in relevant part, as follows:

> Employer practices
>
> It shall be an unlawful employment practice for an employer –
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;
>
> (m) Impermissible consideration of race, color, religion, sex, or national origin in employment practices.
>
> Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated that practice.

67.    Defendant, BSA, upon information and belief, has employed not less than fifteen employees for all relevant periods and is a covered employer subject to Title VII.

68.    Defendant, BNL, upon information and belief, has employed not less than fifteen employees for all relevant periods and is a covered employer subject to Title VII.

69.    Defendant, DOE, upon information and belief, has employed not less than fifteen employees for all relevant periods and is a covered employer subject to Title VII.

70.    While BSA was, for all relevant periods herewith, Plaintiff's employer, BNL, which is owned and overseen by DOE, was a joint employer subject to Title VII.

71.    Plaintiff, for all relevant periods herewith, was a covered employee of BSA and/or BNL, which is owned and overseen by DOE.

72. Plaintiff has been a professing Christian and, as such, falls within the class of individuals protected by Title VII.

73. Plaintiff, as a Christian and in furtherance of her sincerely held religious beliefs, cannot receive any of the COVID-19 vaccines.

74. Plaintiff received notice of the BNL.GOV Mandate which, upon information and belief, became a condition to maintain employment with Defendants' company(ies).

75. Plaintiff requested an Accommodation to be exempted from the BNL.GOV Mandate due to her sincerely held religious beliefs.

76. Plaintiff's request for an Accommodation due to her sincerely held religious beliefs included, but was not limited to, a reference to Plaintiff's body being the temple of the Holy Spirit.

77. Plaintiff cited within the request for an Accommodation several Scriptures and provided an explanation as to how her sincerely held religious beliefs conflict with the BNL.GOV Mandate.

78. Plaintiff offered to produce a letter from Plaintiff's religious leader in further verification as to the sincerity of her genuine religious beliefs, which Defendants expressed no interest in considering and/or receiving the same.

79. Plaintiff inquired with BSA/BNL as to the lack of any meaningful good faith interactive dialogue in connection with her request for an Accommodation to be exempt from the BNL.GOV Mandate since there was only the exchange of written correspondence(s).

80. Defendants expressed no interest in any further meaningful good faith interactive dialogue with Plaintiff, including no interest in receiving and/or reviewing a letter from Plaintiff's religious leader.

81. Ultimately, Defendants denied Plaintiff's request for an Accommodation to be exempted from the BNL.GOV Mandate solely based on Defendants' determination that Plaintiff had not demonstrated entitlement to receive an Accommodation.

82. Defendants did not deny Plaintiff's request for an Accommodation due to any claimed undue hardship.

83. To the contrary, Defendants, none of which are institutions of faith or religious institutions, made the determination that Plaintiff's religious beliefs are not sincere.

84. Nevertheless, Defendants did grant many requests submitted by employees of the company(ies) to be exempted from the BNL.GOV Mandate.

85. Defendants, yet again, while none are institutions of faith or religious institutions made the determination that employees, other than Plaintiff, professed sincere religious beliefs that warranted an Accommodation in order for the other employees to remain gainful employment and likewise adhere to their sincerely held religious beliefs by exempting the other employees from the BNL.GOV Mandate.

86. Upon denying Plaintiff's request for an Accommodation, Defendants also notified Plaintiff that, unless she provided evidence of full vaccination from COVID-19 by December 17, 2021, she would be terminated.

87. As Plaintiff could not agree to receive any of the COVID-19 vaccines due to Plaintiff's sincerely held religious beliefs, Defendants terminated Plaintiff from employment.

88. BSA was Plaintiff's employer, but most of the interactions between Plaintiff and BSA in connection with the request for an Accommodation to be exempted from the BNL.GOV Mandate occurred with individuals, upon information and belief, affiliated or associated with BNL, which is an entity owned and overseen by DOE.

89.     Most, if not all, of the emails sent to Plaintiff in connection with the request for an Accommodation to be exempted from the BNL.GOV Mandate were sent from a 'bnl.gov' email address.

90.     Most, if not all, of the correspondence received from Plaintiff in connection with the request for an Accommodation to be exempted from the BNL.GOV Mandate was on letterhead entitled BNL. The BNL letterhead referenced that Plaintiff's employer, BSA, manages BNL on behalf of DOE, which owns and oversees BNL.

91.     BNL, which is owned and overseen by DOE, is a joint employer for purposes of Title VII.

92.     Upon information and belief, DOE, in owning and overseeing BNL, for all relevant periods of time herewith, has been inextricably involved in the decision-making process pertaining to the management of BNL by BSA, including, but not limited to the implementation and/or enforcement of the BNL.GOV Mandate, which Plaintiff was subjected to.

93.     Upon information and belief, DOE, in furtherance of the Government Agreement entered with BSA maintains the ultimate control on decision making pertaining to BNL, including, but not limited to the dictates pertaining to mandatory vaccination from COVID-19 of any employees of BSA/BNL, including Plaintiff.

94.     Upon information and belief, DOE spearheads the operations of BNL including, but not limited to, the issuance of dictates to BSA in connection with the Government Agreement and also the mandatory vaccination from COVID-19 of any employees of BSA/BNL, including Plaintiff.

95.     DOE, which owns and oversees BNL, is a joint employer for purposes of Title VII.

96. The actions of Defendants, in terminating Plaintiff from employment due to Plaintiff exercising sincerely held religious beliefs, constitutes discriminatory unemployment practices in violation of Title VII.

97. As a direct result of the actions of Defendants' unlawful employment practices in violation of Title VII, Plaintiff has suffered and will continue to suffer harm, including, the violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, and special damages.

**SECOND CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**BSA, BNL AND DOE**
**BASED ON VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 –**
**Failure to Engage in Meaningful Dialogue**
**Failure to Provide Reasonable Accommodations:**

98. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint and incorporate those allegations herein by reference.

99. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. makes it an unlawful employment practice to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

100. Defendant, BSA, upon information and belief, has employed not less than fifteen employees for all relevant periods and is a covered employer subject to Title VII.

101. Defendant, BNL, upon information and belief, has employed not less than fifteen employees for all relevant periods and is a covered employer subject to Title VII.

102.   Defendant, DOE, upon information and belief, has employed not less than fifteen employees for all relevant periods and is a covered employer subject to Title VII.

103.   While BSA was, for all relevant periods herewith, Plaintiff's employer, BNL, which is owned and overseen by DOE, was a joint employer subject to Title VII.

104.   Plaintiff, for all relevant periods herewith, was a covered employee of BSA and/or BNL, which is owned and overseen by DOE.

105.   Plaintiff has been a professing Christian and, as such, falls within the class of individuals protected by Title VII.

106.   Plaintiff, as a Christian and in furtherance of her sincerely held religious beliefs, cannot receive any of the COVID-19 vaccines.

107.   Plaintiff received notice of the BNL.GOV Mandate which, upon information and belief, became a condition to maintain employment with Defendants' company(ies).

108.   Plaintiff requested an Accommodation to be exempted from the BNL.GOV Mandate due to her sincerely held religious beliefs.

109.   Plaintiff's request for an Accommodation due to her sincerely held religious beliefs included, but was not limited to, a reference to Plaintiff's body being the temple of the Holy Spirit.

110.   Plaintiff cited within the request for an Accommodation several Scriptures and provided an explanation as to how her sincerely held religious beliefs conflict with the BNL.GOV Mandate.

111.   Plaintiff offered to produce a letter from Plaintiff's religious leader in further verification as to the sincerity of her genuine religious beliefs, which Defendants expressed no interest in considering and/or receiving the same.

112.   Plaintiff inquired with BSA/BNL as to the lack of any meaningful good faith interactive dialogue in connection with her request for an Accommodation to be exempt from the BNL.GOV Mandate since there was only the exchange of written correspondence(s).

113.   Defendants expressed no interest in any further meaningful good faith interactive dialogue with Plaintiff, including no interest in receiving and/or reviewing a letter from Plaintiff's religious leader.

114.   Ultimately, Defendants denied Plaintiff's request for an Accommodation to be exempted from the BNL.GOV Mandate solely based on Defendants' determination that Plaintiff had not demonstrated entitlement to receive an accommodation.

115.   As Plaintiff could not agree to receive any of the COVID-19 vaccines due to Plaintiff's sincerely held religious beliefs, Defendants terminated Plaintiff from employment.

116.   BSA was Plaintiff's employer, but most of the interactions between Plaintiff and BSA in connection with the request for an Accommodation to be exempted from the BNL.GOV Mandate occurred with individuals, upon information and belief, affiliated or associated with BNL, which is an entity owned and overseen by DOE.

117.   Most, if not all, of the emails sent to Plaintiff in connection with the request for an Accommodation to be exempted from the BNL.GOV Mandate were sent from a 'bnl.gov' email address.

118.   Most, if not all, of the correspondence received from Plaintiff in connection with the request for an Accommodation to be exempted from the BNL.GOV Mandate was on letterhead entitled BNL. The BNL letterhead referenced that Plaintiff's employer, BSA, manages BNL on behalf of DOE, which owns and oversees BNL.

119. BNL, which is owned and overseen by DOE, is a joint employer for purposes of Title VII.

120. Upon information and belief, DOE, in owning and overseeing BNL, for all relevant periods of time herewith, has been inextricably involved in the decision-making process pertaining to the management of BNL by BSA, including, but not limited to the implementation and/or enforcement of the BNL.GOV Mandate, which Plaintiff was subjected to.

121. Upon information and belief, DOE, in furtherance of the Government Agreement entered with BSA maintains the ultimate control on decision making pertaining to BNL, including, but not limited to the dictates pertaining to mandatory vaccination from COVID-19 of any employees of BSA/BNL, including Plaintiff.

122. Upon information and belief, DOE spearheads the operations of BNL including, but not limited to, the issuance of dictates to BSA in connection with the Government Agreement and also the mandatory vaccination from COVID-19 of any employees of BSA/BNL, including Plaintiff.

123. DOE, which owns and oversees BNL, is a joint employer for purposes of Title VII.

124. Defendants refused to explore available reasonable alternatives to allow Plaintiff to do her job.

125. Defendants refused to engage in any timely, interactive, meaningful, or good faith process with Plaintiff to accommodate her sincerely held religious beliefs.

126. Defendants never demonstrated that an Accommodation posed an undue hardship on the operation of the business.

127. Defendants intentionally violated Plaintiff's rights under Title VII with malice or reckless indifference.

128. As a direct result of the actions of Defendants' unlawful employment practices in violation of Title VII, Plaintiff has suffered and will continue to suffer harm, including, the violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, and special damages.

**THIRD CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**BSA, BNL AND DOE**
**BASED ON 42 U.S.C. §1983**
**RELIGION CLAUSES**
**FIRST AMENDMENT FREE EXERCISE CLAUSE**
**UNITED STATES CONSTITUTION**

129. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint and incorporate those allegations herein by reference.

130. The right to free exercise of religion is a right protected and guaranteed by the First Amendment of the U.S. Constitution.

131. The liberties under the First Amendment apply to the states and their political subdivisions through the Fourteenth Amendment.

132. DOE is the legal owner of the property where BNL is located.

133. DOE funds BNL, and also oversees BNL.

134. BSA is the manager and operator of BNL.

135. The Government Agreement which was entered between DOE and BSA indicates that DOE has a Site Office at BSA's business address in Upton, New York.

136.  Upon information and belief, the implementation and enforcement of the BNL.GOV Mandate by Defendants for its employees was a direct result and/or response to federal governmental directives regarding the vaccination of workers in the public and private sectors from COVID-19.

137.  Most, if not all, of the emails sent to Plaintiff in connection with the request for an Accommodation to be exempted from the BNL.GOV Mandate were sent from a 'bnl.gov' email address.

138.  Most, if not all, of the correspondence received from Plaintiff in connection with the request for an Accommodation to be exempted from the BNL.GOV Mandate was on letterhead entitled BNL. The BNL letterhead referenced that Plaintiff's employer, BSA, manages BNL on behalf of DOE, which owns and oversees BNL.

139.  Upon information and belief, DOE, in owning and overseeing BNL, for all relevant periods of time herewith, has been inextricably involved in the decision-making process pertaining to the management of BNL by BSA, including, but not limited to the implementation and/or enforcement of the BNL.GOV Mandate, which Plaintiff was subjected to.

140.  Upon information and belief, DOE, in furtherance of the Government Agreement entered with BSA maintains the ultimate control on decision making pertaining to BNL, including, but not limited to the dictates pertaining to mandatory vaccination from COVID-19 of any employees of BSA/BNL, including Plaintiff.

141.  Upon information and belief, DOE spearheads the operations of BNL including, but not limited to, the issuance of dictates to BSA in connection with the Government

Agreement and also the mandatory vaccination from COVID-19 of any employees of BSA/BNL, including Plaintiff.

142. The BNL.GOV Mandate was a condition of employment imposed by a governmental actor(s).

143. The actions of Defendants have been, and continue to be, done under the color of law.

144. Plaintiff has a sincerely held religious belief that compels her to refuse any COVID-19 vaccine.

145. Defendants have violated the Religion Clauses through its evaluation process which looks for heretics or hypocrites.

146. The evaluation process or protocol that Defendants uses imposes requirements that stand as hostile to the religious beliefs of Plaintiff and acts in a manner that passes judgment upon, or presupposes the illegitimacy of, religious beliefs and practices. Therefore, the protocol is not neutral.

147. Defendants' detailed probe into the beliefs of Plaintiff exceeds sincerity by determining orthodoxy, verity of beliefs, and hypocrisy.

148. Defendants' evaluators, i.e. the BSA Panel and any other representatives of Defendants involved in the evaluation process or protocol, are taking on the role that the First Amendment reserves to ecclesiastical courts, not government officials.

149. Faith is intrinsically subjective and, as such, a religious objector cannot be held to an objective measure of proof regarding what lays within his or her heart, mind, and soul. Belief in what one may demonstrate to the senses is not faith. Although an employee's faith may be deemed as heresy to some and incomprehensible to others, employers

cannot require orthodoxy of employees according to a recognized religion or demand that employees be put to the proof of their religious beliefs.

150. The protocol that Defendants' evaluators utilized in connection with accommodation requests submitted by employees seeking an exemption from the BNL.GOV Mandate policy constitutes individualized assessments, giving broad discretion to an evaluator, and thus the protocol utilized by Defendants is not neutral and generally applicable.

151. Defendants unconstitutionally required any employee seeking a religious exemption from the BNL.GOV Mandate give a description for his or her beliefs that meets the standards of secular logic, while the very nature of faith is that it transcends logic.

152. Defendants admittedly have granted most of the Accommodations requesting exemption from the BNL.GOV Mandate.

153. Defendants admittedly acknowledge its undertaking of individualized assessments as its protocol in evaluating accommodation requests submitted by employees seeking exemption from the BNL.GOV Mandate.

154. If the response received by Defendants to their individualized assessment from the person of faith was not deemed persuasive to the governmental reviewer, then Defendants made the determination that the believer does not live in accordance with his or her religious confession.

155. Plaintiff requested an Accommodation to be exempted from the BNL.GOV Mandate due to her sincerely held religious beliefs, which consisted of an explanation as to how the available vaccines from COVID-19 conflicted with Plaintiff's faith.

156. Plaintiff's request for an Accommodation due to her sincerely held religious beliefs included, but was not limited to, a reference to Plaintiff's body being the temple of the Holy Spirit.

157. Generally, an employer should proceed on the assumption that a request for a religious accommodation is based on sincerely held religious beliefs, practices or observances. However, on or about October 22, 2021, Plaintiff received correspondence from the following email address 'exemption@bnl.gov', which acknowledged receipt of the request for a religious exemption and stated, in relevant part, as follows:  . . .

> We understand you have acknowledged taking adult vaccinations in the past.
>
> Please explain, with detail, how the specific religious belief or practice you observe prevents you from receiving a COVID-19 vaccination but has not prevented you from receiving other vaccinations.

158. In response to the October 22, 2021 correspondence sent from the 'bnl.gov' email address on behalf of BSA to Plaintiff, a supplemental explanation was provided by Plaintiff regarding her sincerely held religious beliefs and the conflict of those beliefs with receiving any of the available COVID-19 vaccines.

159. On or about November 4, 2021, BNL on behalf of BSA notified Plaintiff that the request for an Accommodation seeking a religious exemption from the BNL.GOV Mandate was denied. The denial stated, in relevant part, as follows:

> BSA has carefully considered your request, and after engaging in the interactive dialogue with you, it has determined that it is unable to approve your accommodation request because, among other things, the information you provided does not demonstrate your entitlement to a religious accommodation.

160. Within the position statement submitted on behalf of Defendants in the EEOC process includes the governmental reviewer(s)' further concessions regarding the secular scrutinization of Plaintiff's religious beliefs.

161. The EEOC position statement of the Defendants states, in relevant part, as follows:

the vagueness of her religious objections and citations to general biblical verses made it nearly impossible to identify the precise basis of her objection and the extent to which it truly conflicted with BSA's vaccine requirement. Ultimately, her request, expressed a preference against receiving the vaccine rooted in false and/or misinformation rather than sincerely held religious beliefs.

162. Additionally, within BSA's position statement, states, in part, as follows:

Ms. Urena's assertions that her "body is the temple of the Holy Spirit" along with her other citations to vague Biblical passages, is similarly unpersuasive. Presumably, only Ms. Urena's receipt of the COVID-19 vaccine would corrupt that temple – not *any other vaccinations* or *any other* medical treatment, including those she voluntarily received as an adult, such as the October 2020 flu vaccine. While it is certainly Ms. Urena's right to refuse a vaccine or treatment she prefers not to receive, BSA is under no obligation to accommodate that preference merely because it is cloaked in religious language.

163. After denying Plaintiff's request for an Accommodation to be exempted from the BNL.GOV Mandate, Defendants gave Plaintiff an ultimatum by notifying her as follows:

The Lab will provide you time to obtain your vaccination if you should decide to do so. You are required to validate with the Occupational Medicine Clinic ("OMC") by December 17, 2021, that you have been vaccinated with both shots of either the Pfizer/BioNTech or Moderna vaccines or the first and only shot of the Johnson & Johnson vaccine. This means that you will be fully vaccinated by December 31, 2021, two weeks after the date of your final vaccination. If you do not validate your vaccination status by December 17, 2021, your resignation will be effective December 21, 2021.

During the period between November 8, 2021, through the date you are fully vaccinated (two weeks after your final vaccination in the series) or your resignation date, if you decided not to get the vaccine (December 21, 2021) you are required to follow the attached BNL COVID-19 Vaccination Requirement Accommodation Rules, which may be updated at any time. These rules, at a minimum, require the use of face coverings, social distancing measures, self-monitoring, and regular testing at least once per week. Please be advised that your failure to adhere to these rules may result in disciplinary action up to and including the immediate termination of your employment.

164. The ultimatum required Plaintiff to choose between her employment and her faith.

165. The BNL.GOV Mandate implemented by Defendants forces Plaintiff to choose between receiving a COVID-19 vaccine in violation of Plaintiff's sincerely held religious belief or be fired.

166.   Thus, the conduct of Defendants imposes a substantial burden on Plaintiff and interferes with, and deprives her of, the enjoyment of the religious liberties guaranteed by the First Amendment of the United States Constitution.

167.   As a direct result of the actions of Defendants' violation of the Free Exercise Clause, Plaintiff has suffered and will continue to suffer harm, including, the violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, and special damages.

**FOURTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**BSA, BNL AND DOE**
**BASED ON 42 U.S.C. §1983**
**FIRST AMENDMENT ESTABLISHMENT CLAUSE**
**UNITED STATES CONSTITUTION**

168.   Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint and incorporate those allegations herein by reference.

169.   The right to free exercise of religion is a right protected and guaranteed by the First Amendment of the U.S. Constitution.

170.   The liberties under the First Amendment apply to the states and their political subdivisions through the Fourteenth Amendment.

171.   DOE is the legal owner of the property where BNL is located.

172.   DOE funds BNL, and also oversees BNL.

173.   BSA is the manager and operator of BNL.

174.   The Government Agreement which was entered between DOE and BSA indicates that DOE has a Site Office at BSA's business address in Upton, New York.

175. Upon information and belief, the implementation and enforcement of the BNL.GOV Mandate by Defendants for its employees was a direct result and/or response to federal governmental directives regarding the vaccination of workers in the public and private sectors from COVID-19.

176. Most, if not all, of the emails sent to Plaintiff in connection with the request for an Accommodation to be exempted from the BNL.GOV Mandate were sent from a 'bnl.gov' email address.

177. Most, if not all, of the correspondence received from Plaintiff in connection with the request for an Accommodation to be exempted from the BNL.GOV Mandate was on letterhead entitled BNL. The BNL letterhead referenced that Plaintiff's employer, BSA, manages BNL on behalf of DOE, which owns and oversees BNL.

178. Upon information and belief, DOE, in owning and overseeing BNL, for all relevant periods of time herewith, has been inextricably involved in the decision-making process pertaining to the management of BNL by BSA, including, but not limited to the implementation and/or enforcement of the BNL.GOV Mandate, which Plaintiff was subjected to.

179. Upon information and belief, DOE, in furtherance of the Government Agreement entered with BSA maintains the ultimate control on decision making pertaining to BNL, including, but not limited to the dictates pertaining to mandatory vaccination from COVID-19 of any employees of BSA/BNL, including Plaintiff.

180. Upon information and belief, DOE spearheads the operations of BNL including, but not limited to, the issuance of dictates to BSA in connection with the Government

Agreement and also the mandatory vaccination from COVID-19 of any employees of BSA/BNL, including Plaintiff.

181.  The BNL.GOV Mandate was a condition of employment imposed by a governmental actor(s).

182.  The actions of Defendants have been, and continue to be, done under the color of law.

183.  The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another. This constitutional prohibition of denominational preferences is inextricably connected with the continuing vitality of the Free Exercise Clause… The government must be neutral when it comes to competition between sects". "The State may not adopt programs or practices … which 'aid or oppose' any religion. This prohibition is absolute". *Larson v. Valente*, 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982).

184.  To comply with the Establishment Clause, the statute at issue must have a secular legislative purpose; its principal or primary effect must be one that neither advances nor inhibits religion; and the statute must not foster an excessive government entanglement with religion. *Newdow v. Peterson*, 753 F.3d 105 (2nd Cir. Court of Appeals, 2014).

185.  Defendants admittedly granted most of the requests for Accommodation made by employees seeking to be exempted from the BNL.GOV Mandate due to religious reasons.

186.  However, Defendants denied Plaintiff's request for an Accommodation under the guise that Plaintiff failed to demonstrate entitlement to a religious exemption from the BNL.GOV Mandate to maintain employment with Defendants company(ies).

187.   Defendants essentially questioned the sincerity or legitimacy of Plaintiff's faith, while, selectively and preferentially, concluding that many other employees who submitted requests for an Accommodation in order to be exempt from the BNL.GOV Mandate, were valid and acceptable requests for a religious exemption.

188.   Defendants, in concluding that Plaintiff failed to demonstrate entitlement to an Accommodation due to the sincerity of her religious beliefs, while simultaneously granting numerous other accommodations finding that the other requests constituted sincerely held religious beliefs, is a violation of the Establishment Clause of the First Amendment of the United States Constitution.

189.   As a direct result of the actions of Defendants' violation of the Establishment Clause, Plaintiff has suffered and will continue to suffer harm, including, the violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, and special damages.

**FIFTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**BSA, BNL AND DOE**
**BASED ON 42 U.S.C. §1983**
**THE EQUAL PROTECTION CLAUSE**
**FOURTEENTH AMENDMENT**
**<u>UNITED STATES CONSTITUTION</u>**

190.   Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint and incorporate those allegations herein by reference.

191.   The Equal Protection Clause of the Fourteenth Amendment generally requires that every regulation be at a minimum rationally related to a legitimate governmental interest.

192.   However, when an individual is a part of a suspect class, such as religion, a heightened level of scrutiny is required relative to governmental actions that unfavorably impact the suspect class.

193.   DOE is the legal owner of the property where BNL is located.

194.   DOE funds BNL, and also oversees BNL.

195.   BSA is the manager and operator of BNL.

196.   The Government Agreement which was entered between DOE and BSA indicates that DOE has a Site Office at BSA's business address in Upton, New York.

197.   Upon information and belief, the implementation and enforcement of the BNL.GOV Mandate by Defendants for its employees was a direct result and/or response to federal governmental directives regarding the vaccination of workers in the public and private sectors from COVID-19.

198.   Most, if not all, of the emails sent to Plaintiff in connection with the request for an Accommodation to be exempted from the BNL.GOV Mandate were sent from a 'bnl.gov' email address.

199.   Most, if not all, of the correspondence received from Plaintiff in connection with the request for an Accommodation to be exempted from the BNL.GOV Mandate was on letterhead entitled BNL. The BNL letterhead referenced that Plaintiff's employer, BSA, manages BNL on behalf of DOE, which owns and oversees BNL.

200.   Upon information and belief, DOE, in owning and overseeing BNL, for all relevant periods of time herewith, has been inextricably involved in the decision-making process pertaining to the management of BNL by BSA, including, but not limited to

the implementation and/or enforcement of the BNL.GOV Mandate, which Plaintiff was subjected to.

201.   Upon information and belief, DOE, in furtherance of the Government Agreement entered with BSA maintains the ultimate control on decision making pertaining to BNL, including, but not limited to the dictates pertaining to mandatory vaccination from COVID-19 of any employees of BSA/BNL, including Plaintiff.

202.   Upon information and belief, DOE spearheads the operations of BNL including, but not limited to, the issuance of dictates to BSA in connection with the Government Agreement and also the mandatory vaccination from COVID-19 of any employees of BSA/BNL, including Plaintiff.

203.   The BNL.GOV Mandate was a condition of employment imposed by a governmental actor(s).

204.   The actions of Defendants have been, and continue to be, done under the color of law.

205.   Plaintiff, as a Christian, is a part of a suspect class for purposes of the Equal Protection Clause.

206.   Defendants admittedly granted requests submitted by employees for an Accommodation to be exempted from the BNL.GOV Mandate due to medical reasons.

207.   Disabilities and/or medical conditions, unlike religion, do not constitute a suspect class for purposes of the Equal Protection Clause.

208.   As such, in granting medical exemptions from the BNL.GOV Mandate, but denying Plaintiff's request for a religious exemption from the BNL.GOV Mandate, Defendants have violated the Equal Protection Clause.

209.   Also, Defendants admittedly granted most of the Accommodation requests submitted by employees seeking to be exempted from the BNL.GOV Mandate due to their religious beliefs in order that the other employees could remain gainfully employed and simultaneously adhere to their sincerely held religious beliefs.

210.   Nevertheless, Defendants denied Plaintiff's request for Accommodation to be exempted from the BNL.GOV Mandate concluding that Plaintiff failed to demonstrate entitlement to a religious Accommodation and thus Defendants prevented Plaintiff from remaining gainfully employed and simultaneously adhering to Plaintiff's sincerely held religious beliefs.

211.   Defendants, none of which are institutions of faith or religious institutions, made the determination that Plaintiff's religious beliefs were not, in Defendants' estimation, sincere and thus not warranting an Accommodation.

212.   Therefore, under a class of one theory, Defendants have violated the Equal Protection Clause.

213.   As a direct result of the actions of Defendants' violation of the Equal Protection Clause, Plaintiff has suffered and will continue to suffer harm, including, the violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, and special damages.

**SIXTH CAUSE OF ACTION**
**AGAINST THE DEFENDANTS**
**BSA, BNL AND DOE**
**BASED ON BREACH OF IMPLIED CONTRACT OF EMPLOYMENT**

214.   Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint and incorporate those allegations herein by reference.

215.   Defendant BSA hired Plaintiff as an employee in 1995 and the employment relationship continued until Plaintiff's termination in 2021.

216.   DOE is the legal owner of the property where BNL is located.

217.   DOE funds BNL, and also oversees BNL.

218.   BSA, for all relevant periods of time, managed BNL on behalf of DOE.

219.   New York State Executive Law, Article 15, Human Rights Law ("NYSHRL") §296 provides, in relevant part, as follows:

> It shall be an unlawful discriminatory practice for any employer, or an employee or agent thereof, to impose upon a person as a condition of obtaining or retaining employment, … any terms or conditions that would require such person to violate or forego a sincerely held practice of his or religion, … unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business.

220.   Upon information and belief, for all relevant periods of time, BSA was an employer fully knowledgeable of NYSHRL and voluntarily agreed to provide its employees with the protections afforded to employees in the State of New York including NYSHRL.

221.   Upon information and belief, for all relevant periods of time, BNL, which is owned and overseen by DOE, was an employer fully knowledgeable of NYSHRL and voluntarily agreed to provide its employees with the protections afforded to employees in the State of New York including NYSHRL.

222.   Upon information and belief, for all relevant periods of time, DOE was an employer fully knowledgeable of NYSHRL and voluntarily agreed to provide its employees with the protections afforded to employees in the State of New York including NYSHRL.

223. Upon information and belief, Defendants made its employees aware that the employer(s) would comply with all applicable laws and regulations pertaining to the protection of employees, including but not limited to NYSHRL §296 which pertains to unlawful discriminatory practices.

224. Plaintiff has been a professing Christian and, as such, falls within the class of individuals protected by Section 10(a) of §296 of NYSHRL.

225. Plaintiff, as a Christian and in furtherance of her sincerely held religious beliefs, cannot receive any of the COVID-19 vaccines.

226. Plaintiff received notice of the BNL.GOV Mandate which, upon information and belief, became a condition to maintain employment with the Defendants' company(ies).

227. Plaintiff requested Accommodation due to her sincerely held religious beliefs.

228. Plaintiff's request for Accommodation due to her sincerely held religious beliefs included, but was not limited to, a reference to Plaintiff's body being the temple of the Holy Spirit.

229. Plaintiff cited within the request for Accommodation several Scriptures and provided an explanation as to how her sincerely held religious beliefs conflict with the BNL.GOV Mandate.

230. Plaintiff offered to produce a letter from her religious leader in further verification as to the sincerity of Plaintiff's religious beliefs, which Defendants expressed no interest in considering and/or receiving the same.

231. Plaintiff inquired with BSA/BNL as to the lack of any meaningful good faith interactive dialogue in connection with her request for Accommodation since there was only the exchange of written correspondence(s).

232. However, without engaging in any bona fide effort, Defendants were dismissive to any further interactive dialogue which required actual communication with the Plaintiff, other than the exchanging of documents.

233. Ultimately, Defendants denied Plaintiff's request for Accommodation solely based on the employer's determination that Plaintiff had not demonstrated entitlement to receive an accommodation.

234. Defendants did not deny Plaintiff's request for an Accommodation due to any claimed undue hardship.

235. To the contrary, Defendants, none of which are institutions of faith or religious institutions, made the determination that Plaintiff's religious beliefs are not sincere.

236. Nevertheless, Defendants did grant many requests submitted by employees of the company(ies) to be exempted from the BNL.GOV Mandate.

237. Defendants, yet again, while none are institutions of faith or religious institutions, made the determination that employees, other than Plaintiff, professed sincere religious beliefs that warranted an Accommodation in order for the other employees to remain gainful employment and likewise adhere to their sincerely held religious beliefs by exempting the other employees from the BNL.GOV Mandate.

238. In fact, Defendants granted many requests for Accommodation due to religious reasons.

239. Upon denying Plaintiff's request for Accommodation, Defendants also notified the Plaintiff that, unless she provided evidence of full vaccination by December 17, 2021, she would be terminated.

240. As Plaintiff could not agree to receive any COVID-19 vaccine due to her sincerely held religious beliefs, Defendants terminated Plaintiff from employment.

241. The actions of Defendants, in terminating Plaintiff from employment due to her exercising her sincerely held religious beliefs, constitutes discriminatory unemployment practices in violation of NYSHRL §296.

242. Defendants misled its employee(s), including Plaintiff, that the employer(s) would comply with all laws designed to protect employees, including NYSHRL §296, and the failure of Defendants to comply with NYSHRL §296 is a breach of the implied contract of employment between Plaintiff and Defendants.

243. Defendants represented to its employee(s), including Plaintiff, that the employer(s) would comply with all laws designed to protect employees, including NYSHRL §296, and the failure of Defendants to comply with NYSHRL §296 is a breach of the implied contract of employment between Plaintiff and Defendants.

244. As a direct result of the actions of Defendants' breach of implied contract of employment, Plaintiff has suffered and will continue to suffer harm, including, the violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, and special damages.

## **PRAYER FOR RELIEF**:

WHEREFORE, Plaintiff respectfully prays this Court grant relief as follows:

A.  Full reinstatement of employment with BSA, including, but not limited to full restoration of all income and benefits which she would have been entitled to but for the wrongful termination by Defendants due to Plaintiff exercising her sincerely held religious beliefs;

B.  Award Plaintiff for actual, consequential and incidental financial losses, including, but not limited to loss backpay, front pay, benefits, and other compensation plus interest;

C.  Award Plaintiff compensatory damages;

D.  Award Plaintiff punitive damages;

E.  Award Plaintiff nominal damages;

F.  Restore any vacation days, comp hours, and lost time hours used by Plaintiff;

G.  Award Plaintiff reasonable attorneys' fees and costs of suit; and

H.  Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

Dated this 13th day of December, 2022

Respectfully Submitted,

*-S-*

_____
April Forbes, Esquire (**Bar #AF0833**)
PACIFIC JUSTICE INSTITUTE, INC.
Counsel for the Plaintiff
350 Northern Boulevard
Suite 324, Box 1061
Albany, New York 12204-1000
(518) 721-8369 (Telephone)
(518) 707-0880 (Facsimile)
aforbes@pji.org (Email)